## Carmichael, Appellant, *v.* Hunter *et al.*

A court of chancery has jurisdiction to decree an account for profits of lands against a disseisor, where some of the complainants are infants.

Where an answer sets up facts as a plea in bar, the allegations of the bill must be either expressly admitted or denied.

Where an answer was rejected as insufficient, and leave given to answer further, which was declined, but permission asked to plead and denied, such denial was held, not ground of error, inasmuch as the defendant could have insisted upon his facts as a plea in his amended answer.

APPEAL from the superior court of chancery.

The appellees filed their bill in the chancery court in November, 1837.

The bill sets forth that Andrew Hare, of Kentucky, was in his life-time possessed by virtue of a Spanish title of a tract of land, in Wilkinson county, in this state, (then Mississippi Territory,) of about 800 acres. That A. Hare died in 1800, leaving one child, John Hare, and his widow, Margaret, the mother of John, formerly Margaret Bryant, and *sister* to Phebe Hunter, Thomas Bryant, Moses Bryant, Benjamin Bryant, and Mary Bryant; and whom the bill states, viz: the said Phebe, Thomas, Moses, Benjamin and Mary, "were and are the legal heirs and representatives of John Hare, deceased, at the time of his death, who died intestate," but several of whom have since died, and their children respectively claimed their undivided right of inheritance.

Bill stated that Andrew Hare left a will, which was destroyed by fire in Lexington, Kentucky; but a copy was preserved and proved, as exhibited by Gen. Bodley, a witness, since dead, and with whom has died all knowledge of the authenticity of said will, as complainants believe. The will devised the lands aforesaid, to John Hare, &c. The bill stated that Margaret Hare (the widow) died in 1801 or '02. John Hare died in 1806, at 11 years of age, and that his mother's brothers and sisters aforesaid, are his heirs at law.

That John Hare was the ward of Dr. Hunter, who as executor, &c. and as guardian had possession for some years of the land aforesaid, by Postlethwaite as agent, who, after the death of John Hare, became and acted as agent of John Hare's heirs at law, the complainants below, and exhibits filed of Postlethwait's accounts and correspondence showed the fact; and that a part of said rents and profits were disposed of under a certain decree in Pennsylvania to use of complainants, and all other of said rents not so appropriated were duly accounted for by said agent to 1819, inclusive.

That early in 1820, John F. Carmichael, the defendant below, without right or authority intruded upon the possession, and from thence to the end of the year 1830, possessed, rented, received rents, and used the same, without the knowledge or permission of complainants; who being non-residents, and many of them infants, and *femes covert,* and unadvised of the situation of their rights, were not cognizant of his possession. The bill charges that Carmichael knew the situation and circumstances of the title to said land, and of complainants' claim thereto. That they believe the rents were worth from $500 to $700 per year, but not knowing, pray discovery, which defendant has been requested to account for and pay on amicable demand, but has neglected and refused so to do.

Bill also prays discovery and account of the matters charged, and that defendant be charged with interest on annual rents, &c.

Bill also charges that the complainants' title has been tried *at law,* in a suit of Phil. Hickey *v.* Gilbert & Deloach, *tenants* of complainants, which suit was "*managed and conducted throughout by defendant,*" and decided in complainants' favor. And that the record exhibited showed by consent rule, and by evidence excepted to, that the title of complainants was therein adjudged, and sustained before this bill was filed.

To this bill defendant filed his general demurrer, and then assigned as special causes the misjoinder of parties complainants.

2. That statement in bill respecting suit in Pennsylvania, is impertinent and immaterial.

3. Same of suit of Hickey *v.* Deloach, &c.

4. That complainants have no right of discovery.

This demurrer was overruled and leave to answer.

The answer denied that defendant ever ousted complainants' agent, or that defendant ever cultivated said land with his own hands, or that he ever rented said land to others, or that rents were ever received by defendant for said land "*except as agent of Phil. Hickey*," who defendant believes was possessed of said land under claim of title, till ousted by complainants' attorney, causing the suit of Hickey ads. Gilbert & Deloach, mentioned in the complainants' bill : and says also that defendant is informed and believes suit is now pending at law between Hickey and complainants for the title to said land.

Defendant relied upon the above facts, and plead in bar, &c. demurred to all right of discovery, and pleaded the statute of limitations in bar to all relief.

On motion of the complainant, the answer and demurrer were rejected by the court, and leave given to file a further answer, which the defendant declined, and asked permission *to plead*, which was denied by the court. A *pro confesso* was then taken and decree awarded, from which defendant appealed to this court.

Winchester for appellant.

1. The demurrer ought to have been sustained, and the bill dismissed.

A bill in chancery will not lie upon a charge of *ouster* and *tortious possession*, to compel a *disseisor* of lands to account to his *disseisee*, as a bailiff or receiver of rents, or to pay as a tenant for use and occupation. Here the defendant is charged with ousting the plaintiffs, with tortiously and without authority from any one taking possession, and without right and of his own wrong continuing to control the use of the possession, cultivating two or three years with his own hands, but the greater part of the time leasing and renting to others, and receiving the rents and profits.

And yet upon these charges of ouster, tort and wrong, plaintiffs call upon defendant to account and pay as their lawful tenant and bailiff or receiver.

There is an adequate remedy at law where the plaintiffs have their election, either to waive the tort and sue for use and occupation, or to sue for the trespass, but they cannot even there in an

action for tort recover against him as a receiver, or as a tenant. Upon the statements and charges in the bill, the plaintiffs can have no right to the discovery, or the relief which is asked.    1 Maddox, 288.    2 Maddox 170.    Fonblanque 52.

2. But if plaintiffs had a right to an answer, Carmichael's denial of all the material charges against him and his statement that the rents received by him were received as agent for Hickey, who was in possession claiming the title to the land, is a complete bar to any further discovery.   Defendant had a right to rely upon these facts as a bar to any action against him, and then to demur to the attempt made to fish for evidence to be used hereafter in a suit against Hickey, in which Carmichael could be called upon as a witness, and consequently could not be made a defendant to a bill for a discovery which could not be used against Hickey, and could serve no other purpose than to enable plaintiffs to sound Carmichael as a witness.   Courts of equity never lend themselves to any such fishing bills.   2 Maddox, p. 342, 299, 307.   1 Johns. Ch. Rep. page 74, 75, 547.   2 Brown's 232.   11 Vesey, 42.   2 Vesey, Jun. 454.

3. Even if the demurrer was overruled, and the answer rejected properly, defendant should have been allowed to plead.   He certainly had a right to set up the statute of limitations, or any other substantial plea as a bar to the plaintiff's action.   The court ruled out the answer, because the defendant in his answer answered to a part of the bill, and demurred to the discovery, and plead the statute of limitations, by relying upon it in his answer. The authorities fully, not only sustain this mode of defence, but show that it is the proper mode.   2 Maddox, 331, 342.

But even if it were not the proper mode, is the defendant to be deprived the privilege of setting up a substantial defence in the proper mode, merely because he has once mistaken the proper mode of making the defence!

Upon all three of the above grounds, the decision of the chancellor ought to be reversed, but principally upon the first, as it is perfectly clear the plaintiffs cannot come into a court of chancery upon any grounds stated in the bill.   This I think so certain, that I have not dwelt upon the special causes of demurrer, one of which is the non-joinder of parties.   Some of the complainants

are descendants of uncles or aunts, claiming by representation, which is done away with among collaterals, except with the descendants of brothers and sisters, by our statute of descents.

Henderson, for Appellees.

First, as to the demurrer of defendant being general to whole bill, cannot be sustained if bill is good in any part.   1 J. C. Rep. 57;  1 J. C. 417;  2  C. C. R. 344;  7 J. C. R. 172, 173;  4  J.  Ch. R. 294.

1. Part of complainants being infants, have a peculiar claim to be heard in equity.   1 Maddox Ch. 91, 330, 331.

2. The right of *discovery* in this bill is strong and clear.   3 J. Ch. Rep. 467;  4 J. Ch. Rep. 294;  5 J. Ch. Rep. 184;  1 J. Cas. 429.

3. But the whole ground to claim equitable relief is equally manifest.   Rents are recoverable in chancery when remedy at law is difficult and doubtful, 4 J. Ch. R. 290; (See 3 J. Ch. R. 51.)   From the number of parties interested as plaintiffs, including so many infants, and with such unequal rights in the interest sued for, the remedy was difficult.   And from the necessity shown in the bill for a discovery, a complete remedy could not have been had at law.   See 8 Wheat. Rep. 1;  1 Yerger, 360.

But if the equity were questionable on either of the three grounds above specified, and yet good for either, the rule applies, that if chancery gains jurisdiction for any one cause, it will retain it and give relief on all others connected with the case.   10 J. R. 587; 2 J. Ch. 424; 17 J. R. 384; See Va. Rep.

As to the special causes of demurrer assigned, the 1st is not *true in fact*, and the 2d, 3d and 4th, are *humbugs*.   It is sufficient, however, to say that in chancery, where there is a general demurrer, there is no such thing as special causes less than the general demurrer.   Because in chancery the rule of law on demurrer is reversed.   And in this court a general demurrer being in, if not good to the whole bill, is bad in toto.   (Authorities above.)

But an argument offered by defendant in his brief in support of his demurrer is, that the bill charges that Carmichael obtained

possession of our lands wrongfully, and took rents and profits without right, and without our leave, and these furnish him an equitable defence in this court.   No authority is referred to by him in support of his position, and I presume the idea quite original.   How many hundred cases do the books disclose, of executors and administrators entering *wrongfully* on lands of estates, and taking rents and profits, without any right or authority to do so, being held to account in chancery to the heirs, &c.

It is a rule of law that rents and profits are not recoverable against one in possession claiming adversely, but possession must. first be reclaimed by judgment at law on the title.

Our bill shows title adjudged in favor of complainants, in ejectment, against complainants' tenants in possession, and hence this rule in its full extent has been complied with by complainants, before seeking this account.

In 1 Maddox, p. 91, it is said an infant may have his bill for possession of his estate, and an account for rents and profits. And all persons entering upon an infant's estate are charged as bailiffs or guardian.   After recovery against disseisors of the possession, the disseisees may recover rents and profits of the disseisor, his servants, or strangers acquiring title under him.   1 Yerger, 360; 8 Wend. 587; 8 Wheat. 1.

From the authorities above recited, it is clear there is no pretence for the demurrer, and it was therefore correctly overruled by the chancellor.

Again: The pretended answer tendered by defendant and now in the record, was properly rejected, because it included a restricted demurrer, and a restricted plea, predicated on facts set forth in answer.   10 Rule in Ch.; 7 J. Ch. R. 171; 11 Vesey, 68; Defendant submitting to answer, must do so fully, J. Ch. Index, p. 210, s. 94, 95.

The chancellor therefore committed no error in ordering the answer to be rejected, and bill taken as confessed, and decree to account, &c.   But was in fact indulgent beyond the rule, in offering defendant a 60 day rule, for further answer, which was declined.

It is supposed this court cannot, on this appeal, notice the contents of the answer filed, except to ascertain the propriety of the chancellor's order rejecting it.

But to note briefly the pretensions it sets up as justification, and on which it predicates the plea therein, the following principles and authorities are referred to : The warrant of no man, not even the king's, can excuse the doing of an illegal act.   15 Vin. Ab. 316; 3 La. 352; Tillinghast Eject. p. 331, and notes; Chitty's Pl. 72; 2 Maddox, 244.   Servants and strangers taking possession in good faith, but under one who .has no right, are alike amenable for rents and profits.   8 Wend. 587; 8 Wheat. 1.   It is on like principle that an act in wrong never confers a right, that property wrongfully detached from the freehold, remains the property of the owner of the inheritance.   3 Wend. 108–9; J. R. 35, do. 331; 8 Wend. 587, 594; 7 Con. 95.   And a *bona fide* purchaser of such property acquires no title.   3 Wend. 108.   The pretence also, that as we charge the act of defendant, in obtaining possession, rents and profits, as tortious or wrong, that therefore we cannot recover by waiving the *tort* as for account, &c., is contrary to all precedent.   Fraud, which is always tortious, is a peculiar subject of equity jurisdiction for civil relief, *though it is never* punished in this court as a *tort.*   A conspiracy to defraud is a misdemeanor indictable at common law.   Yet in all such cases the court of chancery gives peculiar relief *civiliter*, leaving the court at law to punish the fraud.   And the court of chancery will compel discovery in all such cases, whenever it will not subject the defendant to a criminal prosecution.   3 J. Ch. R. 407; 1 J. Cas. 417; 1 C. C. E. 111, 2 do. 175.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The appellees allege in their bill that as heirs at law of John Hare they acquired a right to a tract of land in Wilkinson county; that in the year 1820 the appellant without any authority, took possession of said land and held the same until the year 1830, sometimes cultivating it himself, but most generally leasing it out; that he received great profit therefor, but how much they know not.   The bill prays that he may be made to account for the profits, and for discovery.   To this bill the appellant first demurred. The demurrer was overruled, and leave given to answer, and on motion the answer was rejected, and further leave given to put in a second answer.   This the appellant declined, but asked leave to

[Carmichael, Appellant, *v.* Hunter *et al.*]

plead, which was refused, and a *pro confesso* taken, and it is now said that the chancellor erred in overruling the demurrer, because the remedy was at law; and also in refusing to allow the defendant to plead, instead of answer.

The title set up in the bill is a legal one, and the action for rents and profits is a legal remedy, to which the plaintiffs should have resorted, but for the circumstance of some of them being infants. This circumstance is the only one which gives jurisdiction to the court of chancery, or at least it now conclusively settles the question of jurisdiction. The defendant having entered upon the estate, which in part belonged to infants, is to be treated as their guardian or bailiff, and this seems to be the reason on which chancery may take jurisdiction. This question was very fully examined in the case of Nelson *v.* Allen and Harris, 1 Yerger, 360, in which the English authorities are cited. The same objection was there taken, but the court held that the jurisdiction was unquestionable, both because it was matter of account, and because of the infancy of the plaintiff. In that case, like the present, the bill was filed for rents and profits against the defendants who had no title, and it may therefore be considered as an authority decisive in the present case. The general doctrine is also to be found in 1 Maddox, 91. But suppose the complainants were driven into a court of law to assert their right, how could it be successfully done? They claim the land as heirs at law of John Hare, and coparceners, like joint tenants, must join both in actions *ex contractu* and *ex delicto.* Some of them being infants would have to sue by guardian or *prochein amie.* In that capacity the other parties could not join them in a suit at law, and it cannot therefore be said that there is a remedy at law. Certainly it is not as ample and complete as it is in chancery; and the demurrer was therefore properly overruled.

When the demurrer was overruled the defendant had leave to answer, which he did by denying that he ever held possession or leased the land, except as the agent of Philip Hickey, and he insists upon the facts set out by way of plea, and demurs to the discovery sought. To this answer exceptions were taken, and it was rejected. We are not certainly informed by the record as to the grounds of exceptions to the answer, but it is manifest from the

bill and exhibits, that as an answer it is evasive, and as a plea it presents no bar.   It neither positively denies or admits the allegations in the bill, and was properly rejected.

When it was so rejected, the defendant had leave to answer further.   This he declined to accept, but moved the court for leave to plead, which was refused.   We are at a loss to perceive any good reason for declining to answer, and insisting on the right to plead, and we are also at a loss to perceive how any injury could have resulted from the decision of the chancellor, on a point which could have had no influence on the merits.   By answering, every thing which could have availed the defendant as a plea, might also have been insisted on in the answer.   By giving him leave to file a further answer, every ground of defence was laid open to him, and yet he refused to receive it on broader grounds than such as he demanded.   He asked less than the court gave, and as we cannot for this reason see how he could have been prejudiced, we cannot reverse the decree.   It was in a great degree a matter of discretion with the chancellor, which forms no ground of error.   But we are not informed what the defendant wished to plead.   He had before set up certain facts and relied on them as a plea; no new matter is disclosed which shows that he had any other merits.

The decree must be affirmed.